UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

LEON E. GERHARD,

                              Plaintiff,

        v.

CAROLYN W. COLVIN, Commissioner of
Social Security, [1]

                              Defendant.

Case No. 3:12-cv-05551-RBL-KLS

REPORT AND RECOMMENDATION

Noted for May 3, 2013

        Plaintiff has brought this matter for judicial review of defendant's denial of his

applications for disability insurance and supplemental security income ("SSI") benefits.  This

matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. §

636(b)(1)(B) and Local Rule MJR 4(a)(4) and as authorized by Mathews, Secretary of H.E.W. v.

Weber, 423 U.S. 261 (1976).  After reviewing the parties' briefs and the remaining record, the

undersigned submits the following Report and Recommendation for the Court's review,

recommending that for the reasons set forth below, defendant's decision to deny benefits should

be reversed and this matter should be remanded for further administrative proceedings.

                        FACTUAL AND PROCEDURAL HISTORY

        On February 22, 2006, plaintiff filed an application for disability insurance benefits and

---

[1] On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of the Social Security Administration.  Therefore, under Federal Rule of Civil Procedure 25(d)(1), Carolyn W. Colvin is substituted for Commissioner Michael J. Astrue as the Defendant in this suit.  **The Clerk of Court is directed to update the docket accordingly.**

REPORT AND RECOMMENDATION - 1

another one for SSI benefits, alleging in both applications that he became disabled beginning January 1, 2003. See Administrative Record ("AR") 60.  Both applications were denied upon initial administrative review on June 23, 2006, and on reconsideration on October 2, 2006. See also id.  Following a hearing held before an administrative law judge ("ALJ") on February 21, 2008, plaintiff was found to be not disabled by that ALJ in a decision dated August 12, 2008. See AR 60-73.  It appears that the ALJ's decision became the Commissioner's final decision, as there is no indication the Commissioner reopened it and plaintiff does not allege that it was reopened by the actions of the second ALJ discussed below or that it now should be.[2]

On January 9, 2009, plaintiff filed a second application for disability insurance benefits and another one for SSI benefits, this time alleging in both applications that he became disabled beginning January 22, 2002. See AR 16.  Both applications were denied on initial administrative review on April 13, 2009, and on reconsideration on August 10, 2009. See id.  On November 5, 2010, a hearing was held before a different ALJ, at which plaintiff, represented by counsel, appeared and testified. See AR 36-56.  At that hearing, plaintiff amended his alleged onset date of disability to January 9, 2009, and – given that his date last insured was September 30, 2008 – the ALJ dismissed the application for disability insurance benefits, thus leaving only plaintiff's

---

[2]  A final decision of the Commissioner may be reopened where the ALJ "considers 'on the merits' the issue of the claimant's disability during the already-adjudicated period." Lester v. Chater, 81 F.3d 821, 827 (9th Cir. 1996); see also Lewis v. Apfel, 236 F.3d 503, 510 (9th Cir. 2001).  If "such a de facto reopening occurs, the Commissioner's decision as to the prior period is subject to judicial review." Lester, 81 F.3d at 827.  "[W]here the [ALJ's] discussion of the merits is followed by a specific conclusion that the claim is denied on res judicata grounds," though, "the decision should not be interpreted as re-opening the claim and is therefore not reviewable." Krumpelman v. Heckler, 767 F.2d 586, 589 (9th Cir. 1985) (citation omitted).  Although as plaintiff points out in determining whether he was disabled the second ALJ considered a period of time dating back to well before the date of the decision issued by the prior ALJ, the evidence that the second ALJ reviewed appears to largely, if not solely, have concerned the period thereafter. See AR 16-31.  In addition, as discussed below, the second ALJ expressly found plaintiff had not rebutted the presumption of continuing non-disability established by the prior ALJ's decision. See id.  The undersigned thus agrees that no reopening of the prior ALJ's decision has occurred or should occur.

REPORT AND RECOMMENDATION - 2

application for SSI benefits in place.[3]  See AR 46.

In a decision dated November 30, 2010, the second ALJ determined that plaintiff had not

met his burden of rebutting the presumption of continuing non-disability established by the prior

ALJ's decision, and that he was not disabled and thus not entitled to disability benefits.  See AR

16-31.  Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council

on April 27, 2012, making the ALJ's decision the Commissioner's final decision.  See AR 1; see

20 C.F.R. § 416.1481.  On June 25, 2012, plaintiff filed a complaint in this Court seeking judicial

review of the Commissioner's final decision.  See ECF #1.  The administrative record was filed

with the Court on September 6, 2012.  See ECF #8.  The parties have completed their briefing,

and thus this matter is now ripe for the Court's review.

Plaintiff argues the Commissioner's final decision should be reversed and remanded for

an award of benefits, or in the alternative for further administrative proceedings, because the

second ALJ erred: (1) in finding he had not rebutted the presumption of continuing non-

disability; (2) in evaluating the medical evidence in the record; and (3) in discounting his

credibility.  The undersigned agrees the ALJ erred in determining plaintiff to be not disabled,

but, for the reasons set forth below, recommends that while the Commissioner's decision should

be reversed, this matter should be remanded for further administrative proceedings.

<u>DISCUSSION</u>

The determination of the Commissioner of Social Security (the "Commissioner") that a

---

[3] The Social Security Act provides that "[e]very individual who . . . is insured for disability insurance benefits," who "has filed [an] application for disability insurance benefits" and "who is under a disability . . . , shall be entitled to" such benefits. 42 U.S.C. § 423(a).  If an individual is "neither fully nor currently insured, no benefits are payable." 20 C.F.R. § 404.101(a).  To be entitled to disability insurance benefits, therefore, a claimant "must establish that [his or] her disability existed on or before" the date his or her insured status expired. Tidwell v. Apfel, 161 F.3d 599, 601 (9th Cir. 1998); see also Flaten v. Secretary of Health & Human Services, 44 F.3d 1453, 1460 (9th Cir. 1995) (social security statutory scheme requires disability to be continuously disabling from time of onset during insured status to time of application for benefits, if individual applies for benefits for current disability after expiration of insured status).

REPORT AND RECOMMENDATION - 3

claimant is not disabled must be upheld by the Court, if the "proper legal standards" have been applied by the Commissioner, and the "substantial evidence in the record as a whole supports" that determination. Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986); see also Batson v. Commissioner of Social Security Admin., 359 F.3d 1190, 1193 (9th Cir. 2004); Carr v. Sullivan, 772 F.Supp. 522, 525 (E.D. Wash. 1991) ("A decision supported by substantial evidence will, nevertheless, be set aside if the proper legal standards were not applied in weighing the evidence and making the decision.") (citing Brawner v. Secretary of Health and Human Services, 839 F.2d 432, 433 (9th Cir. 1987)).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citation omitted); see also Batson, 359 F.3d at 1193 ("[T]he Commissioner's findings are upheld if supported by inferences reasonably drawn from the record."). "The substantial evidence test requires that the reviewing court determine" whether the Commissioner's decision is "supported by more than a scintilla of evidence, although less than a preponderance of the evidence is required." Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975). "If the evidence admits of more than one rational interpretation," the Commissioner's decision must be upheld. Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984) ("Where there is conflicting evidence sufficient to support either outcome, we must affirm the decision actually made.") (quoting Rhinehart v. Finch, 438 F.2d 920, 921 (9th Cir. 1971)). [4]

---

[4] As the Ninth Circuit has further explained:

> . . . It is immaterial that the evidence in a case would permit a different conclusion than that which the [Commissioner] reached. If the [Commissioner]'s findings are supported by substantial evidence, the courts are required to accept them. It is the function of the [Commissioner], and not the court's to resolve conflicts in the evidence. While the court may not try the case de novo, neither may it abdicate its traditional function of review. It must scrutinize the record as a whole to determine whether the [Commissioner]'s conclusions are rational. If they are . . . they must be upheld.

REPORT AND RECOMMENDATION - 4

I.     The ALJ's Determination Regarding the Presumption of Continuing Non-Disability

The Commissioner may apply administrative *res judicata* "to bar reconsideration of a period with respect to which she has already made a determination, by declining to reopen the prior application." Lester v. Chater, 81 F.3d 821, 827 (9th Cir. 1996).  "[T]he principle of res judicata," though, "should not be applied rigidly in administrative proceedings." Vasquez v. Astrue, 572 F.3d 586, 597 (quoting Lester, 81 F.3d at 827); see also Gregory v. Bowen, 844 F.2d 664, 666 (9th Cir. 1988).  In regard to "the period *subsequent* to a prior determination," furthermore, the authority of the Commissioner to apply administrative *res judicata* "is much more limited." Lester, 81 F.3d at 827 (emphasis in original).

Normally, the Commissioner's prior determination "that a claimant is not disabled 'creates a presumption that the claimant continued to be able to work after'" the date of that determination. Vasquez v. Astrue, 572 F.3d 586, 597 (9th Cir. 2009) (quoting Lester, 81 F.3d at 827)).  That presumption of continuing non-disability will not apply, however, "if there are 'changed circumstances.'" Lester, 81 F.3d at 827 (quoting Taylor v. Heckler, 765 F.2d 872, 875 (9th Cir. 1985)).  Where there is "[a]n increase in the severity" of the impairments alleged by the claimant in the prior proceeding, the application of *res judicata* is precluded Id. (citing Taylor, 765 F.2d at 875 (while claimant could overcome presumption by proving changed circumstances indicating greater disability, because her condition had improved rather than deteriorated, she had failed to make requisite showing of changed circumstances); see also Chavez v. Bowen, 844 F.2d 691, 693 (9th Cir. 1988) (to overcome presumption of continuing non-disability, claimant must prove changed circumstances indicating greater disability).

A claimant, however, need not show that his or her "condition has worsened to show

Sorenson, 514 F.2dat 1119 n.10.

REPORT AND RECOMMENDATION - 5

changed circumstances." <u>Lester</u>, 81 F.3d at 827.  Rather, as noted by the Ninth Circuit in <u>Lester</u>, "[o]ther changes suffice." <u>Id.</u>  Thus, "[f]or example, a change in the claimant's age category, as defined in the [Commissioner's] Medical-Vocational Guidelines [(the "Grids")], constitutes a changed circumstance that precludes the application of res judicata." <u>Id.</u>  This is "[b]ecause a change in age status often will be outcome-determinative under the bright-line distinctions drawn by the" Grids. <u>Chavez</u>, 844 F.2d at 693.

"In addition, the Commissioner may not apply res judicata where the claimant raises a new issue, such as the existence of an impairment not considered in the previous application." <u>Lester</u>, 81 F.3d at 827; <u>see also</u> <u>Vasquez</u>, 572 F.3d at 597; <u>Gregory</u>, 844 F.2d at 666 (finding that because claimant's application raised new issue of mental impairment, it would be inappropriate to apply *res judicata* to bar her claim) (citing <u>Taylor</u>, 765 F.2d at 876 (suggesting *res judicata* may be improper where claimant has presented new facts to show prior adverse determination may have been incorrect)).  Further, "all" a claimant "has to do to preclude the application of res judicata is to raise a new issue in the later proceeding." <u>Vasquez</u>, 572 F.3d at 597 n.9.  That is, at least in regard to the existence of a new impairment, there appears to be no requirement that the claimant make a showing of severity in regard thereto. <u>See</u> <u>id.</u>

Plaintiff argues the second ALJ erred in finding the presumption of continuing non-disability was not rebutted, because he failed to properly consider whether there were changed circumstances due to the issue of plaintiff's diagnosed depression, an impairment that was not considered by the prior ALJ.  The undersigned agrees.  In his decision, the second ALJ found in relevant part as follows:

> . . . There are references in the recent evidence, as was the case in the record prior to the August 12, 2008, decision, to anxiety and depression.  However, the claimant's impairments are best described as [an attention deficit hyperactivity disorder, a learning disorder and an organic mental disorder both

in this decision] and in the prior decision, and the references to anxiety and depression do not rise to the level of "changed circumstances" within the meaning of [Acquiescence Ruling] AR 97-4(9).

AR 20.  As noted above, however, with regard to changed circumstances based on impairments not previously considered, "all" a claimant "has to do to preclude the application of res judicata is to *raise* a new issue in the later proceeding." Vasquez, 572 F.3d at 597 n.9 (emphasis added). That is, there is no requirement that the claimant establish that the newly alleged impairment is in fact a "severe" impairment as the ALJ appears to have mistakenly assumed.[5] See id.; see also AR 97-4(9), 1997 WL 742758 *3.

Plaintiff clearly raised the issue of depression in connection with the applications for disability benefits that formed the basis for the second ALJ's decision. See AR 172.  In addition, while the second ALJ states "[t]here are references . . . in the record prior to the August 12, 2008, decision, to anxiety and depression" (AR 20), he cites no portion of the record for that period to show that this is indeed the case.  Nor does a review of that portion of the record reveal any such references indicating depression was a significant issue for plaintiff. See, e.g., AR 255-265-86, 295-303, 305-07, 430-35, 437-42, 444-52.  The record also fails to indicate that depression actually was raised as a basis for plaintiff's claim of disability in the previous proceeding or that the prior ALJ considered it a possible impairment in her decision. See AR 60-73.  The record subsequent to that prior ALJ's decision, furthermore, does contain evidence of that impairment's existence and that it adversely impacts his functioning. See AR 203-06, 223-25, 336-50, 352-54, 408-11, 494-96, 518-19.  Accordingly, the presumption of continuing non-disability has been

---

[5] Defendant employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. See 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920.  If the claimant is found disabled or not disabled at any particular step thereof, the disability determination is made at that step, and the sequential evaluation process ends. See id.  At step two of the evaluation process, the ALJ must determine if an impairment is "severe." 20 C.F.R. § 404.1520, § 416.920.  An impairment is not severe only if the evidence establishes a slight abnormality that has "no more than a minimal effect on an individual[']s ability to work." SSR 85-28, 1985 WL 56856 *3; see also Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996); Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir.1988).

REPORT AND RECOMMENDATION - 7

1   rebutted, and the ALJ erred in finding otherwise.

2   II.      The ALJ's Evaluation of the Medical Evidence in the Record

3           The ALJ is responsible for determining credibility and resolving ambiguities and

4   conflicts in the medical evidence. See Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998).

5   Where the medical evidence in the record is not conclusive, "questions of credibility and

6   resolution of conflicts" are solely the functions of the ALJ. Sample v. Schweiker, 694 F.2d 639,

7   642 (9th Cir. 1982).  In such cases, "the ALJ's conclusion must be upheld." Morgan v.

8   Commissioner of the Social Sec. Admin., 169 F.3d 595, 601 (9th Cir. 1999).  Determining

9   whether inconsistencies in the medical evidence "are material (or are in fact inconsistencies at

10  all) and whether certain factors are relevant to discount" the opinions of medical experts "falls

11  within this responsibility." Id. at 603.

12          In resolving questions of credibility and conflicts in the evidence, an ALJ's findings

13  "must be supported by specific, cogent reasons." Reddick, 157 F.3d at 725.  The ALJ can do this

14  "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence,

15  stating his interpretation thereof, and making findings." Id.  The ALJ also may draw inferences

16  "logically flowing from the evidence." Sample, 694 F.2d at 642.  Further, the Court itself may

17  draw "specific and legitimate inferences from the ALJ's opinion." Magallanes v. Bowen, 881

18  F.2d 747, 755 (9th Cir. 1989).

19          The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted

20  opinion of either a treating or examining physician. Lester, 81 F.3d at 830.  Even when a treating

21  or examining physician's opinion is contradicted, that opinion "can only be rejected for specific

22  and legitimate reasons that are supported by substantial evidence in the record." Id. at 830-31.

23  However, the ALJ "need not discuss *all* evidence presented" to him or her. Vincent on Behalf of

REPORT AND RECOMMENDATION - 8

1   Vincent v. Heckler, 739 F.3d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in

2   original).  The ALJ must only explain why "significant probative evidence has been rejected."

3   Id.; see also Cotter v. Harris, 642 F.2d 700, 706-07 (3rd Cir. 1981); Garfield v. Schweiker, 732

4   F.2d 605, 610 (7th Cir. 1984).

5          In general, more weight is given to a treating physician's opinion than to the opinions of

6   those who do not treat the claimant. See Lester, 81 F.3d at 830.  On the other hand, an ALJ need

7   not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and

8   inadequately supported by clinical findings" or "by the record as a whole." Batson v.

9   Commissioner of Social Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004); see also Thomas v.

10  Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir.

11  2001).  An examining physician's opinion is "entitled to greater weight than the opinion of a

12  nonexamining physician." Lester, 81 F.3d at 830-31.  A non-examining physician's opinion may

13  constitute substantial evidence if "it is consistent with other independent evidence in the record."

14  Id. at 830-31; Tonapetyan, 242 F.3d at 1149.

15         A.      Dr. Harmon

16         Plaintiff challenges the ALJ's following findings regarding the medical opinion source

17  evidence in the record:

18             I accord no weight to the [state agency] evaluation of the claimant by Dana
              Harmon, Ph.D., on October 20, 2009 (Exhibit 21F).  The cognitive and social
19             functioning ratings at Exhibit 21F, page 13 are not supported in the medical
              record.  Dr. Harmon's mental status observations at Exhibit 21F, page 15 do
20             not support such severe ratings.  The record contains numerous additional
              [state agency] forms, several from Dr. Harmon (Exhibits 23F-28F).  These
21             serial evaluations are given no weight.  The conclusions are not supported by
              the clinical findings and the evaluations are made in the context of a very
22             different state program.  There is an aspect of secondary gain for the claimant
              in these evaluations.

23  AR 26 (internal footnote omitted).  As noted by plaintiff, in addition to Dr. Harmon's October

24

25

26

REPORT AND RECOMMENDATION - 9

20, 2009 evaluation, an evaluation of plaintiff was performed by Dr. Harmon on November 13, 2008, as well. See AR 203-06, 208, 223-25; see also AR 454-57, 459-63. Based on that evaluation, Dr. Harmon assessed plaintiff with a number of marked to severe mental functional limitations (see AR 205, 456), and further found in relevant part as follows:

> [Plaintiff] has severe cognitive deficits and mental health difficulties. He appears to meet the [Social Security Administration] SSA criteria for [Listing[6]] 12.02, Organic Mental Disorder. [Plaintiff] appears to have cognitive disabilities as a result of his Attention-Deficit/Hyperactivity Disorder (ADHD), learning disabilities, and apparent borderline intellectual functioning. [Plaintiff] seems to show marked impairment in his concentration, social functioning, and ability to manage activities of daily living as a result of his disabilities. . . .

> [Plaintiff]'s prognosis is guarded. [Plaintiff]'s cognitive deficits would be significant obstacles to his possible employment, particularly in regards to his ability to maintain his concentration and attention at work and to understand, remember, and carry out instructions. [Plaintiff]'s mental health difficulties and difficulties with social isolation would also be serious barriers for his employment or vocational rehabilitation. [Plaintiff] seems very unlikely to be able to maintained [sic] sustained gainful employment at this time . . .

AR 225. In addition, Dr. Harmon gave plaintiff a global assessment of functioning ("GAF") score of 40.[7] See id.

The undersigned agrees with plaintiff that the ALJ erred in failing to address this earlier assessment of Dr. Harmon. As noted above, the ALJ must explain why "significant probative evidence has been rejected." Id. at 830-31. Vincent, 739 F.3d at 1394-95 (citation omitted); see

---

[6] At step three of the sequential disability evaluation process, the ALJ must evaluate the claimant's impairments to see if they meet or medically equal any of the impairments listed in 20 C.F. R. Part 404, Subpart P, Appendix 1 (the "Listings"). See 20 C.F.R § 416.920(d); Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999). If any of the claimant's impairments meet or medically equal a listed impairment, he or she is deemed disabled. Id. Listing 12.02 concerns organic mental disorders as noted by Dr. Harmon. See 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.02.

[7] A GAF score is "a subjective determination based on a scale of 100 to 1 of 'the [mental health] clinician's judgment of [a claimant's] overall level of functioning.'" Pisciotta v. Astrue, 500 F.3d 1074, 1076 n.1 (10th Cir. 2007) (citation omitted). It is "relevant evidence" of the claimant's ability to function mentally. England v. Astrue, 490 F.3d 1017, 1023, n.8 (8th Cir. 2007). "A GAF score of 31-40 indicates some impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) or major impairment in several areas such as work or school, family relations, judgment, thinking or mood." White v. Commissioner of Social Sec., 572 F.3d 272, 276 (6th Cir. 2009) (quoting Edwards v. Barnhart, 383 F.Supp.2d 920, 924 n. 1 (E.D.Mich. 2005)).

REPORT AND RECOMMENDATION - 10

also Cotter, 642 F.2d at 706-07; Garfield, 732 F.2d at 610.  In addition, even when an examining

physician's opinion is contradicted by other medical evidence in the record, that opinion "can

only be rejected for specific and legitimate reasons that are supported by substantial evidence."

Lester, 81 F.3d at 830.  "The decision of an ALJ fails this test," furthermore, "when the ALJ

completely ignores or neglects to mention [an examining] physician's medical opinion that is

relevant to the medical evidence being discussed." Lingenfelter v. Astrue, 504 F.3d 1028, 1045

(9th Cir. 2007).

Defendant argues that because the ALJ "referenced the transcript citation for the

November 2008 [assessment (see AR 26 (citing record exhibits 23F-28F that encompasses AR

453-63 (Exhibit 27F)] as Dr. Harmon's serial findings," and also "gave specific and legitimate

reasons for discounting Dr. Harmon's medical opinion as to [plaintiff's] mental impairments . . .

the [ALJ's] error was harmless."[8] ECF #11, p. 9.  First, even if it is reasonable to assume the

ALJ's reference to Dr. Harmon's "serial evaluations" indicates he actually considered the

November 2008 assessment, the reasons the ALJ gave for discounting those evaluations – and by

inference that assessment –are neither specific nor legitimate.

Second, the mere fact that an evaluation is "made in the context of a very different state

program" (AR 26) is not alone sufficient to discredit that evaluation, without some evidence to

establish or indicate the standards of review of that program are substantially dissimilar to those

used by the Social Security Administration.  Likewise in regard to the ALJ's statement that there

was "an aspect of secondary gain" for plaintiff in Dr. Harmon's evaluations, absent "evidence of

---

[8] Defendant also points to additional findings the ALJ made in regard to plaintiff demonstrating greater abilities than he alleged to Dr. Harmon and to plaintiff's condition and level of functioning having improved.  But these are not the actual reasons the ALJ gave for discounting Dr. Harmon's medical opinions, nor can such reasonably be inferred from the context of the ALJ's decision. See AR 26; Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003) (error to affirm credibility determination based on evidence ALJ did not discuss); Magallanes, 881 F.2d at 755 (court may draw "specific and legitimate inferences from the ALJ's opinion").

REPORT AND RECOMMENDATION - 11

actual improprieties" the purpose for which a medical report is obtained is not a legitimate basis for rejecting it. See Lester, 81 F.3d at 832.  Here, the ALJ fails to point to any evidence in the record that Dr. Harmon's evaluations, including the November 2008 assessment, were done in accordance with substantially different disability determination standards[9] or for a purpose or in a manner indicative of secondary gain.

The ALJ's additional statement that "[t]he conclusions" contained in Dr. Harmon's serial evaluations "are not supported by clinical findings" (AR 26), is further indication that he did not specifically consider Dr. Harmon's November 2008 assessment, or at least that he did not do so with particular care.  Not only did Dr. Harmon perform various psychological tests on plaintiff, but he also included his own personal observations of plaintiff's behavior during the evaluation. See AR 205, 208, 223-25, 456, 459-63; Sprague v. Bowen, 812 F.2d 1226, 1232 (9th Cir. 1987 (opinion that is based on clinical observations supporting diagnosis of depression is competent [psychiatric] evidence); Sanchez v. Apfel, 85 F. Supp.2d 986, 992 (C.D. Cal. 2000) ("[W]hen mental illness is the basis of a disability claim, clinical and laboratory data may consist of the diagnoses and observations of professionals trained in the field of psychopathology.") (quoting Christensen v. Bowen, 633 F.Supp. 1214, 1220-21 (N.D.Cal.1986)).

Dr. Harmon's October 20, 2009 evaluation report, furthermore, not only contains clinical findings consisting of psychological testing results and Dr. Harmon's own personal observations of plaintiff, but the results of a mental status examination he performed as well. See AR 408-10; see also Clester v. Apfel, 70 F.Supp.2d 985, 990 (S.D. Iowa 1999) ("The results of a mental status examination provide the basis for a diagnostic impression of a psychiatric disorder, just as

---

[9] Indeed, as noted above, Dr. Harmon specifically referenced Listing 12.02 in the psychological assessment report he completed at the time (see AR 225, 463), and the state agency psychological/psychiatric evaluation form he also completed at that time (see AR 203-06, 454-57) is often used in the context of, and relied on by, the Commissioner to determine whether or not a claimant is disabled.

REPORT AND RECOMMENDATION - 12

the results of a physical examination provide the basis for the diagnosis of a physical illness or

injury.").  Thus, contrary to the ALJ's statement that the cognitive and social functioning ratings

contained in the October 20, 2009 evaluation report "are not supported in the medical record" –

which by itself would be an unacceptably vague reason for rejecting an examining physician's

opinion[10] – the psychological testing and mental status examination results and Dr. Harmon's

own personal observations contained therein provide such support, as do the testing results and

personal observations contained in the November 2008 assessment.

B.    Dr. Collins

Plaintiff also finds fault with the following findings made by the ALJ:

. . . [A] consultative examiner, William J. Collins, M.D., reported that the
claimant had a mood disorder not otherwise specified, [a] cognitive disorder
not otherwise specified, and [an] attention deficit disorder not otherwise
specified with a Global Assessment of Functioning (GAF) of 65.  Dr. Collins
opined that the claimant was able to perform simple and repetitive tasks.  He
could accept instructions from supervisors and could perform work activities
on a consistent basis without special or additional instructions.  Significantly
for the application of the . . . presumption of continuing non-disability, Dr.
Collins concluded on March 28, 2009, that the claimant had better control
over his depressed mood and had enjoyed improvement.  Dr. Collins stated
that the claimant could maintain regular attendance in the workplace and
complete a normal workday/workweek without interruptions from mental
health conditions.  Dr. Collins reported that the claimant was able to deal with
the usual stress of a competitive workplace (Exhibit 14F).  Dr. Collins'
professional opinion is well-supported by corresponding clinical findings and
explained in a narrative report.  His opinion is afforded significant weight.

AR 25.  Specifically, plaintiff argues that in so finding, the ALJ inaccurately characterized the

_____

[10] It is insufficient for an ALJ to reject the opinion of a physician by merely stating without more by for example, as
in this case, that it is not supported by the medical record.  As the Ninth Circuit has stated:

To say that medical opinions are not supported by sufficient objective findings or are contrary
to the preponderant conclusions mandated by the objective findings does not achieve the level
of specificity our prior cases have required, even when the objective factors are listed
seriatim.  The ALJ must do more than offer his conclusions.  He must set forth his own
interpretations and explain why they, rather than the doctors', are correct. . . .

Embrey v. Bowen, 849 F.2d 418, 421-22 (9th Cir. 1988) (internal footnote omitted).

REPORT AND RECOMMENDATION - 13

conclusions of Dr. Collins.  The undersigned agrees.

Dr. Collins, for example, did not find as the ALJ stated that plaintiff *had* better control over his depressed mood, but rather that he thought that *with* such control, plaintiff would be able to interact with co-workers and/or the public. See AR 336.  But because the ALJ limited plaintiff to "**working with things rather than interacting with people**," the undersigned finds the ALJ's error here to be harmless. AR 21 (emphasis in original); see also Stout v. Commissioner, Social Security Admin., 454 F.3d 1050, 1055 (9th Cir. 2006) (error harmless where it is non-prejudicial to claimant or inconsequential to ALJ's ultimate disability conclusion); Parra v. Astrue, 481 F.3d 742, 747 (9th Cir. 2007) (finding any error harmless because it would not have affected "ALJ's ultimate decision.").

On the other hand, also contrary to what the ALJ stated above, Dr. Collins opined that "*given again proper access to medication and therapy* . . . [plaintiff] will be able to maintain regular attendance in the workplace and complete a normal workday/workweek, without interruptions from his psychiatric condition and deal with the usual stress encountered in the competitive workplace." AR 336-37 (emphasis added).  Here, though, the only other mental functional limitation the ALJ assessed plaintiff with is a restriction to performing simple and repetitive tasks. See AR 21.  Given that this aspect of Dr. Collins's opinion is not adequately encompassed by such a restriction, and that there are questions concerning plaintiff's pursuit of and/or access to mental health treatment as discussed below, the ALJ's error in this instance cannot be said necessarily to be harmless.

III.    The ALJ's Assessment of Plaintiff's Credibility

Questions of credibility are solely within the control of the ALJ. See Sample, 694 F.2d at 642.  The Court should not "second-guess" this credibility determination. Allen, 749 F.2d at 580.

In addition, the Court may not reverse a credibility determination where that determination is based on contradictory or ambiguous evidence. See id. at 579.  That some of the reasons for discrediting a claimant's testimony should properly be discounted does not render the ALJ's determination invalid, as long as that determination is supported by substantial evidence. Tonapetyan , 242 F.3d at 1148.

To reject a claimant's subjective complaints, the ALJ must provide "specific, cogent reasons for the disbelief." Lester, 81 F.3d at 834 (citation omitted).  The ALJ "must identify what testimony is not credible and what evidence undermines the claimant's complaints." Id.; see also Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993).  Unless affirmative evidence shows the claimant is malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." Lester, 81 F.2d at 834.  The evidence as a whole must support a finding of malingering. See O'Donnell v. Barnhart, 318 F.3d 811, 818 (8th Cir. 2003).

In determining a claimant's credibility, the ALJ may consider "ordinary techniques of credibility evaluation," such as reputation for lying, prior inconsistent statements concerning symptoms, and other testimony that "appears less than candid." Smolen, 80 F.3d at 1284.  The ALJ also may consider a claimant's work record and observations of physicians and other third parties regarding the nature, onset, duration, and frequency of symptoms. See id.

The ALJ in this case discounted plaintiff's credibility for the following reasons:

The claimant exaggerated the extent of his limitations from his mental impairments symptoms.  His conservative treatment and activities of daily living are inconsistent with his alleged functional limitations from his mental impairments.  The claimant testified that he was not taking any medications for his impairments. . . . He said that when he was on medications for his mental impairments, he would lie in bed for one or two days a week.  He testified that he takes his girlfriend to medical appointments for her physical disabilities.  The claimant said that he lives on Anderson Island and the only transportation to and from there is by ferry.  He said that they moved there about a year previously seeking cheaper rent.  As noted below, the claimant's

REPORT AND RECOMMENDATION - 15

1
2
3

impairments have not prevented him from taking measures for training as a
diesel mechanic (Exhibit 19F, page 14; Exhibit 29F, page 17).  These
activities and the claimant not taking medication are inconsistent with his
alleged limitations.

4   AR 23.  Plaintiff argues these are not clear and convincing reasons for finding him to be not fully

5   credible regarding his subjective complaints.  The undersigned agrees.

6       First, because as discussed above the presumption of continuing non-disability has been

7   rebutted in this case, the prior ALJ's adverse credibility determination has not become the "law

8   of the case" as asserted by defendant. ECF #11, p. 5.  Nor did the second ALJ state or give any

9
10  indication that he was incorporating that adverse credibility determination by reference also as

11  defendant asserts.  See AR 23-24.  Second, the ALJ fails to point to any specific evidence in the

12  record that plaintiff actually exaggerated his symptoms.  Indeed, as plaintiff notes, Dr. Harmon

13  expressly found no evidence of malingering or symptom exaggeration (see AR 205, 223-24, 456,

14  461-62), and no other medical source in the record appears to have made contrary findings with

15  respect to plaintiff's credibility.

16
17      Failure to assert a good reason for not seeking, or following a prescribed course of,

18  treatment, or a finding that a proffered reason is not believable, "can cast doubt on the sincerity

19  of the claimant's pain testimony." Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989).  Pursuit of

20  conservative treatment only also can be a valid basis for discounting a claimant's credibility. See

21  Meanal v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999) (ALJ properly considered physician's

22  failure to prescribe, and claimant's failure to request serious medical treatment for supposedly

23  excruciating pain); Johnson v. Shalala, 60 F.3d 1428, 1434 (9th Cir. 1995) (ALJ properly found

24  prescription of physician for conservative treatment only to be suggestive of lower level of pain

25  and functional limitation).

26      Plaintiff argues this basis for discounting his credibility was not valid, because he sought

REPORT AND RECOMMENDATION - 16

and received treatment in the form of counseling and medication, and the ALJ failed to explain what other types of treatment he should or could have obtained.  There is some evidence in the record that plaintiff did receive such treatment at times.  See AR 361, 371-74, 380-86, 388, 391-92, 408, 482, 494-95, 500-04, 507-08, 519.  Other portions of the record, however, shows there were significant periods during which no treatment was sought or provided.  See AR 203, 206, 223, 257-58, 266, 297-98, 334, 381, 384, 394, 430, 433, 439-40, 444, 447, 482.[11]  The mere lack of treatment or more aggressive treatment, though, is not the end of the inquiry.

The ALJ "must not draw any inferences" about a claimant's symptoms and their functional effects from the claimant's failure to seek treatment, "without first considering any explanations" that the claimant "may provide, or other information in the case record, that may explain" the failure. Social Security Ruling ("SSR") 96-7p, 1996 WL 374186 *7; see also Carmickle v. Commissioner, Social Sec. Admin., 533 F.3d 1155, 1162 (9th Cir. 2008) (improper to discount credibility on basis of failure to pursue treatment when claimant "has a good reason for not" doing so).  Lack of insurance coverage or inability to afford treatment constitutes one such reason. See id.; Gamble v. Chater, 68 F.3d 319, 321 (9th Cir. 1995).

Plaintiff states he testified at the hearing that his funding for medical care had run out.  Actually, plaintiff's specific testimony was that his "medical only covered . . . six months" at a time, so that he "had to do six months off" and "just recently was . . . started back with [his] psychologist." AR 41.  Other testimony, furthermore, indicates that funding may not have been the obstacle to receiving treatment plaintiff makes it out to be.  For example, plaintiff testified as

---

[11] Although a number of these records are dated prior to plaintiff's amended onset date of disability, they are still relevant given that he originally alleged he first became disabled on January 22, 2002, in the applications for disability benefits he filed on January 9, 2009, and only amended that date due to plaintiff's counsel's belief that he would not be able to establish changed circumstances subsequent to the date of the prior ALJ's decision. See AR 16, 46.

REPORT AND RECOMMENDATION - 17

well that he needed "to find . . . a family doctor so [he] could get [his] medication back." Id. In addition, there is no mention of particular funding or insurance coverage problems in the record outside of plaintiff's hearing testimony.

There also is a fair amount of evidence in the record that plaintiff simply did not pursue any medical treatment for his mental health condition, and that this may have been by choice as opposed to external barriers thereto. At the very least, that evidence shows a lack of any valid explanation for pursuing the recommended treatment at those times. See Fair, 885 F.2d at 603. For example, one psychologist commented that plaintiff "need[ed] to contact his physician for [a] possible" medication trial. AR 439. Another psychologist commented that he had "never followed through in [the] past" in terms of obtaining mental health services. AR 447. A third psychologist reported as follows:

> [Plaintiff] stated that he does not currently take any medications. He reported that he has attempted to receive medication for his "hyperactivity", but "I can't find a doctor who will give it to me." He reported that he attempted to receive psychiatric care through a local clinic when he moved to Washington, however, he was told he needed to participate in an evaluation first, and "*I never ended up going there*."

AR 298 (emphasis added).

Plaintiff argues treatment notes from one of his treatment providers indicate there may have been a misunderstanding regarding taking medication, but the undersigned finds such a misunderstanding is not necessarily implied thereby. See ECF #10, pp. 15-16 (citing and quoting AR 325, 329, 366, 381, 519). Plaintiff also argues it may be that his failure to seek more, or more aggressive, treatment was due to a lack of insight into his condition. There is support in the record for this argument. See AR 259, 261, 268, 394, 409, 441, 451. Other portions of the record, however, indicate no such difficulties with insight. See AR 485. In early November, for example, Dr. Harmon found plaintiff to be "realistic about his mental health difficulties," though

REPORT AND RECOMMENDATION - 18

he found plaintiff's insight to be poor in October 2009. See AR 205, 409, 456; see also AR 407 (noting poor judgment/insight but with recognition of need for treatment).

Thus, although there is evidence in the record that plaintiff may have had legitimate reasons for not pursuing greater mental health treatment, other evidence indicates those reasons may not be completely valid.  What matters here, though, is that the ALJ appears not to have considered these reasons, which was error on his part.  Nor should the Court determine whether those reasons are valid or not at this time, given that it is solely the responsibility of the ALJ to resolve conflicts in the evidence and that the Court may only uphold the determination of an agency based on the evidence it considered. See Connett, 340 F.3d at 874; Reddick, 157 F.3d at 722; Sample, 694 F.2d at 642; Morgan, 169 F.3d at 601.

With respect to the ALJ's last asserted basis for discounting plaintiff's credibility – i.e., his activities of daily living – the Ninth Circuit has recognized "two grounds" for using such activities "to form the basis of an adverse credibility determination." Orn v. Astrue, 495 F.3d 625, 639 (9th Cir. 2007).  First, a claimant's daily activities can "meet the threshold for transferable work skills." Id.  Thus, a claimant's credibility may be discounted if he or she "is able to spend a substantial part of his or her day performing household chores or other activities that are transferable to a work setting." Smolen, 80 F.3d at 1284 n.7.

The claimant, however, need not be "utterly incapacitated" to be eligible for disability benefits, and "many home activities may not be easily transferable to a work environment." Id. In addition, the Ninth Circuit has "recognized that disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations." Reddick, 157 F.3d at 722. Under the second ground in Orn, a claimant's activities of daily living can "contradict his [or her] other testimony." 495 F.3d at 639.

REPORT AND RECOMMENDATION - 19

The fact that plaintiff takes his girlfriend to medical appointments and that he lives in an area served only by ferry, does not in itself constitute a valid basis for discounting the credibility of plaintiff, as there is no indication plaintiff spent a substantial portion of his day going to his girlfriend's medical appointments or riding the ferry, or that those activities are transferrable to a work setting.  Nor does the fact that plaintiff's impairments "have not prevented him from taking measures for training as a diesel mechanic" (AR 23) create such a showing, given that the only measures he appears to have taken is signing up for that training.  See AR 374, 381, 388, 391, 490, 494, 500, 502-03, 507.  These activities also do not necessarily contradict plaintiff's other testimony concerning his symptoms and limitations.

On the other hand, the fact that plaintiff has signed up for such training does give some indication that he believed himself to be capable of engaging therein, and thus that he is more capable than is being claimed.  Indeed, plaintiff has reported being "excited" about engaging in that training and being "confident" that he could do so. See AR 374, 502.  In addition, there is evidence of other reported activities that may call into question plaintiff's credibility.  For example, plaintiff reported to one medical source that he "takes care of the outside of the house." AR 268.  Another medical source stated:

> [Plaintiff] reported that he enjoys riding his bike, working on cars, and playing video games.  He indicated that he performs mechanical work on automobiles and is "sort of" good at these tasks, stating that he can take an engine apart and put it back together, but must carefully mark each part and place it in a specific location, or he will "forget" where it goes and "I'll end up with extra parts."  He added that he can repair "almost anything under the hood," as long as it does not involve the "electrical" system.  He stated he can engage in this activity "all day" to half the day" depending on his mood" [sic] and "how much I gotta [sic] do that day."  He enjoys racing games and can play these "all day" as well.

AR 299 (noting also that plaintiff described typical day as consisting of cleaning up his yard and playing with his dog).  Plaintiff also has reported that working on his girlfriend's car helps him

REPORT AND RECOMMENDATION - 20

relax.  See AR 503.  But given the limited discussion of plaintiff's activities provided by the ALJ, it also is unclear whether the ALJ fully considered this as a basis for discounting his credibility, which therefore requires further development on remand as well.

IV.     This Matter Should Be Remanded for Further Administrative Proceedings

The Court may remand this case "either for additional evidence and findings or to award benefits." Smolen, 80 F.3d at 1292.  Generally, when the Court reverses an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." Benecke v. Barnhart, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted).  Thus, it is "the unusual case in which it is clear from the record that the claimant is unable to perform gainful employment in the national economy," that "remand for an immediate award of benefits is appropriate." Id.

Benefits may be awarded where "the record has been fully developed" and "further administrative proceedings would serve no useful purpose." Smolen, 80 F.3d at 1292; Holohan v. Massanari, 246 F.3d 1195, 1210 (9th Cir. 2001).  Specifically, benefits should be awarded where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the claimant's] evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

Smolen, 80 F.3d 1273 at 1292; McCartey v. Massanari, 298 F.3d 1072, 1076-77 (9th Cir. 2002). As discussed above, the ALJ did not fully and properly evaluate the medical source opinions in the record, which are not in agreement as to plaintiff's mental functional limitations.  Also as discussed above, the ALJ did not conduct a full and proper assessment of plaintiff's credibility. Thus, the ALJ's determinations regarding plaintiff's residual functional capacity and ability to

REPORT AND RECOMMENDATION - 21

perform other jobs existing in significant numbers in the national economy – and therefore his eligibility for disability benefits (see AR 21-31) – cannot be said to be supported by the record at this time.  Because such issues remain in this case, remand for further administrative proceedings by the Commissioner is appropriate.

<u>CONCLUSION</u>

Based on the foregoing discussion, the undersigned recommends the Court find the ALJ improperly concluded plaintiff was not disabled.  Accordingly, the undersigned recommends as well that the Court reverse the ALJ's decision and remand this matter to defendant for further administrative proceedings in accordance with the findings contained herein.

Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 72(b), the parties shall have **fourteen (14) days** from service of this Report and Recommendation to file written objections thereto. <u>See</u> <u>also</u> Fed. R. Civ. P. 6.  Failure to file objections will result in a waiver of those objections for purposes of appeal. <u>See</u> <u>Thomas v. Arn</u>, 474 U.S. 140 (1985).  Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the clerk is directed set this matter for consideration on **May 3, 2013**, as noted in the caption.

DATED this 15th day of April, 2013.


Karen L. Strombom
United States Magistrate Judge

REPORT AND RECOMMENDATION - 22